Zimmerman, J.
On January 11, 1953, upon written application, the insurer issued plaintiff a policy of automobile insurance insuring plaintiff for one year for, among other things, damage to the automobile he then owned from collision or upset to the actual cash value thereof, less $50.
Some two months later, upon a further written application, such policy of insurance was supplemented by an endorsement making its coverage applicable to plaintiff’s newly acquired automobile (the one which was damaged) and extending protection for a two-year period from that date.
Both applications are on printed forms furnished by the insurer and the answers to questions on both were filled in by pencil by an agent of the insurer ostensibly in accordance with information given by plaintiff. The printed forms of the applications are identical, and a question appearing on both is; *57 “Has any insurer ever cancelled any automobile insurance issued, or refused any automobile insurance to the applicant or to any of his household? [] Yes No []” On the first application the initials, “L.S.,” in pencil appear over the “yes,” but a check mark is shown in the square opposite the word, “no.” In the second application, relating to plaintiff’s newly acquired automobile, the check mark appears in the square opposite “no” and the initials, “L.S.S.,” are over the word, “no.” On the face of each application, near the bottom and over plaintiff’s pencilled signature, is the following printed language: “I hereby declare the facts stated herein to be true and request the company to issue the insurance, and any renewals thereof, in reliance thereon.” Whether such declaration is considered as a representation or warranty appears to make no difference. 45 Corpus Juris Secundum, 738, Insurance, Section 729.
Prior to the issuance of the policy here involved, plaintiff held one of a similar type issued by the Grange Mutual Casualty Company. By letter dated September 15, 1952, and addressed to plaintiff, Grange, without explanation, cancelled its policy, effective September 25, 1952, and returned the unused portion of the premium. Plaintiff by letter attempted to discover the reason for the cancellation but Grange in its letter of reply refused any explanation.
At the trial plaintiff and his wife testified positively that, when defendant’s agent, engaged in filling out the initial application for the policy, asked the question concerning previous insurance, he was told in detail about the cancelled Grange policy to which he replied, as stated by plaintiff: “Never mind. As long as you did not have an accident it don’t make any difference.” And plaintiff’s wife testified as follows:
“Q. * * * And what took place when Mr. Gallagher [insurer’s agent] came to your home? A. Well, then, he sat down at the end of the table there, and he started to explain about this insurance to us, and so then my husband and I decided, that we would take it, and he started to fill out these papers, and then he — he said to us:
‘ ‘ ‘ Have you ever had insurance before ? ’
“We said:
*58 “ ‘Yes, we had.’
‘ ‘ Then, lie said:
“ ‘Was it ever canceledU
“Then my husband and I both answered about the same time, and we said:
“ ‘Yes, with the Grange.’
“Then, he looked up, and he said:
“ ‘Why was it canceled?’
“We said that we didn’t know, and then I said to him that:
“ ‘The only reason that I would know was that I had sent a payment in a little late.’
“I said that was the only reason that I kneAV of.
“Q. Was there anything further discussed between you at the time? A. Then, my husband got up, and he was going to get this policy, and he was going to show it to Mr. Gallagher, and Mr. Gallagher then said:
“ ‘Never mind. Forget it.’ ”
One of plaintiff’s sons substantiated the testimony of his parents with reference to the disclosure of the prior insurance and its cancellation. As might be expected, the insurer’s agent denied that there was any disclosure on the part of plaintiff or his wife concerning cancellation of a previous policy, although on the back of the first application under the heading, “Insurance Record,” and over the agent’s signature, the Grange policy is noted with the expiration date given as “Oct-52.” However, its actual expiration date was January 16, 1953.
Plaintiff, a laborer with a grade-school education, testified that he read neither of the applications before signing but answered the questions put to him by the agent fully and truthfully. Incidentally, it appears that the second application executed at the insurer’s office was treated as little more than a formality.
Section 3929.27, Revised Code, reads as follows:
“A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.”
Tins is remindful of the long-established rule that the acts *59 of an agent within the scope of what he is employed to do and with reference to a matter over which his authority extends are binding on his principal.
On March 5, 1879, an act was passed by the General Assembly entitled “An Act to Regulate Contracts of Insurance on- Buildings and Structures.” The act, with some unimportant changes, was carried into the revision of 1880 and became Sections 3643 and 3644, Revised Statutes. See Insurance Co. v. Leslie, 47 Ohio St., 409, 413, 414, 24 N. E., 1072, 1073, 9 L. R. A., 45.
Present Section 3929.27, Revised Code, which is very similar in wording to Section 3644, Revised Statutes, is now an independent statutory provision with its own number, appears in the chapter entitled “Domestic and Foreign Insurance Companies Other than Life,” is complete in itself and evidences to us a clear legislative intent to have it apply generally to all soliciting agents for insurers other than those representing life insurance companies. As indicative of a fixed legislative policy, see Section 3911.22, Revised Code, with respect to the solicitation of applications for life insurance. Reference is also made to Section 3923.141, Revised Code, effective July 1, 1956, which makes one who solicits an application for sickness and health insurance the agent of the insurer. And see Section 3911.06, Revised Code, relating to the answers to questions made by an applicant in his application for a life insurance policy.
But aside from statute, a widely accepted rule applying to the solicitation of -insurance risks generally is stated in 44 Corpus Juris Secundum, 798, Insurance, Section 139, as follows:
“An insurance agent in the sense of one who is employed to solicit risks and effect insurance is the agent of the company by which he is appointed or employed with regard to matters connected with the solicitation of the risk, the making of the application and the issuance of the policy, and cannot be considered in any sense as the agent of insured in any matter connected with the issuance of the policy. This rule applies to mutual as well as stock companies, and * * * also applies notwithstanding a stipulation inserted in the policy subsequently issued that the. acts of such agent in making out the application shall be deemed the acts of insured.”
*60 It naturally follows that information obtained by a soliciting agent of the insurer when writing the application for insurance is imputable to the insurer and it is bound thereby and cannot escape liability on a subsequently issued policy in such an instance by showing that its agent did not correctly disclose such information, in the absence of proof that the applicant knew or should have known that the insurer was being deceived. Motors Ins. Corp. v. Freeman (Okla.), 304 P. (2d), 328. Compare Massachusetts Life Ins. Co. v. Eshelman et al., Exrs., 30 Ohio St., 647; and Foster v. Scottish Union & National Ins. Co. of Edinburgh, 101 Ohio St., 180, 127 N. E. 865.
With respect to the instant controversy, a case decidedly in point in principle is that of Insurance Co. v. Williams, 39 Ohio St., 584, 48 Am. Rep., 474, in which the syllabus reads:
“A soliciting agent, procuring for an insurance company risks and applications on which policies are issued, who fills up the application, is, in so doing, the agent of the company, and not of the insured; and if the agent makes a mistake in wrongly stating facts which were correctly given him by the insured in preparing the application the company is bound by and responsible for such mistake.”
In that case, the application for insurance was made through the soliciting agent of the insurer. Williams, the prospective insured, imparted to the agent a true description of the conditions and surroundings of the property to be insured. The agent by mistake and without Williams’ knowledge gave a different and incorrect version in the application. In ignorance of the mistake and believing that the agent had written down what he, Williams, had told him, Williams signed the application in good faith without reading it or hearing it read. In the application Williams covenanted and agreed with the insurer that the statements and representations contained therein were a full and true exposition of the condition of the property. The policy was issued and the premium paid. A loss occurred and the insurer refused to respond because of the false answers in the application. The District Court and later this court held that the insurer was chargeable with its agent’s mistake and judgment was rendered for the insured. In the opinion this court said:
*61 “The agent had power to solicit risks for the company, receive applications therefor, and forward the same to the company. It is a general rule that when a power is conferred upon an agent, he has by implication such incidental authority as is necessary to carry his power into effect; and a principal is liable for the wrongful acts of his agent acting within his employment. The principal cannot take the benefit of the agent’s acts, and avoid their burdens.”
The Williams case corresponds with the great weight of authority, which is that, where an application for insurance is made out by an agent of the insurer, who fills in false answers to the questions contained therein which have been truthfully answered by the applicant, and there is no fraud, collusion or knowledge, actual or constructive, on the part of the applicant in connection therewith, the insurer can not rely upon the falsity of such answers to avoid liability on the policy issued pursuant to the application. In making out the application, the agent acts for the insurer and consequently the insurer is estopped from relying on the mistake to avoid the obligations of the policy. 29 American Jurisprudence, 643, Section 846; annotation, 148 A. L. R., 507, 508; 45 Corpus Juris Secundum, 733, Insurance, Section 728 et seq.; 17 Appleman, Insurance Law and Practice, 1, Section 9401..
For recent cases applying the rule where automobile insurance was involved, see Heake, Exrx., v. Atlantic Casualty Ins. Co., 15 N. J., 475, 105 A. (2d), 526, and Motors Ins. Corp. v. Freeman, supra.
The policy before us provides:
“In reliance upon the declarations on the supplemental page and subject to the limits of liability, exclusions, conditions and other terms of this policy and for payment of the premium, Allstate agrees with the named insured: * *
The declarations on the supplemental page embrace the statement that no insurer has cancelled or refused any automobile insurance to the insured or a member of his household; and the policy further contains the following provision, “By acceptance of this policy7 the named insured agrees that the declarations on the supplemental page are his agreements and representations, and that this policy embodies all agreements, *62 relating to this insurance, existing between himself and Allstate or any of its agents.” The policy also contains the statement, “Such terms [hereof] as are in conflict with statutes of the state in which this policy is issued are hereby amended to conform.”
Notwithstanding these policy provisions, the insurance risk was solicited by an agent of the insurer authorized to make such solicitations on behalf of his principal as a part of its business, and the knowledge he obtained thereby became that of his principal. Plaintiff desired the protection of automobile insurance and paid a premium therefor. If the agent acting for and on behalf of his principal in soliciting the insurance risk misled plaintiff and in filling out the application noted answers to questions therein different from truthful answers given him by plaintiff, and if plaintiff, in reliance on the agent, acted in good faith, was otherwise blameless and was then issued the policy upon the payment of a premium, pursuant to the application submitted to the insurer by the agent, the insurance was effective regardless of the policy provisions designed to protect the insurer, and, when a loss occurred within the terms of the policy, the insurer was obligated to respond. Compare Union Ins. Co. of Dayton v. McGookey & Moore, 33 Ohio St., 555, 565; Foster v. Scottish Union & National Ins. Co. of Edinburgh, supra; and Hartford Fire Ins. Co. v. Glass, 117 Ohio St., 145, 158 N. E., 93. As we see it, the provisions of the policy referred to above would not operate retroactively to bind plaintiff as against an estoppel which had its origin in conduct antecedent to the policy.
This action was instituted by the plaintiff to recover a money judgment from the insurer on the basis that the insurance was in force and that he sustained a loss within the coverage of the policy. The insurer disclaimed liability because of false answers by plaintiff in the applications which it claimed rendered the insurance policy and the supplement thereto ineffective.
The controversy presented questions of fact involving the credibility of witnesses and the weight to be accorded their testimony. These matters were for the determination of a jury, and we think the insurer’s cross-petition did not alter the *63 situation. Therefore, we entertain the view that the Municipal Court was wrong in taking the case from the jury and in rendering judgment for the insurer, and that the Court of Appeals likewise erred in affirming that action.
On its facts, the case of Fay, Admr., v. Swicker, 154 Ohio St., 341, 96 N. E. (2d), 196, is stronger for the insurer than is the instant one. However, a rule adopted in that case is irreconcilable with the position taken in the instant ease, and consequently the Fay case is overruled so far as it holds that a contractual provision in a policy of insurance, that no knowledge possessed by an agent shall be held to effect a waiver or change in any part of the policy, is conclusive against the insured in a situation where there is evidence from which it could be found that the insurer’s soliciting agent in filling out the application for the policy was chargeable with conduct and knowledge which were imputable to his principal and which would operate as an estoppal against the insurer at the time of the issuance of the policy.
The judgment of the Court.of Appeals is reversed and the cause remanded to the Municipal Court for further proceedings not inconsistent with this opinion.

Judgment reversed.

Weygandt, C. J., Matthias, Bell and Herbert, JJ., concur.
Stewart and Taft, JJ., dissent.