[Cite as *Sullivan v. Westfield Ins. Co.*, 2013-Ohio-146.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| TONY AND STEPHANIE SULLIVAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2012-L-004** |
| WESTFIELD INSURANCE COMPANY, et al. | : : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 11CV000397.

Judgment: Affirmed.

*Patrick J. Perotti*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiffs-Appellants).

*John J. Haggerty* and *Thomas A. Cunniff*, Fox Rothschild, LLP, 2700 Kelly Road, Suite 300, Warrington, PA 18976-2624 (For Defendants-Appellees).

MARY JANE TRAPP, J.

{¶1}  Appellants, Tony and Stephanie Sullivan, appeal from two judgments of the Lake County Court of Common Pleas. The first is an order dismissing certain named defendants from the action, while the second is an order granting appellee, Westfield Insurance Company's ("Westfield"), motion for summary judgment. Through the two orders, the trial court fully disposed of the action.

**{¶2}** We find that the trial court did not err in dismissing two of the named defendants, American Select Insurance Company ("American Select") and Ohio Farmers Insurance Company ("Ohio Farmers"), because the Sullivans failed to state a claim against those two entities upon which relief could be granted. We further find no error in the trial court's grant of summary judgment in favor of the remaining defendant, Westfield, because the Sullivans' claims were barred by the applicable statutes of limitations. Therefore, the decisions of the Lake County Court of Common Pleas are affirmed.

**Substantive Facts and Procedural History**

**{¶3}** On October 5, 1994, the Supreme Court of Ohio, in *Martin v. Midwestern Group Insurance Co.*, 70 Ohio St.3d 478, ruled that uninsured/underinsured ("UM/UIM") coverage followed the insureds under the policy and not the different vehicles in the household, eliminating the "other-owned vehicle exception" to UM/UIM coverage. This decision removed the necessity for insureds to pay UM/UIM premiums on each of the vehicles on their policy, allowing them to pay for such coverage on only one vehicle, but to have coverage for themselves and their resident family members while in any of their owned vehicles.

**{¶4}** Prior to and at the time of the *Martin* decision, the Sullivans had an automobile insurance policy through Westfield. Three cars were listed on the policy, and the Sullivans paid UM/UIM premiums on all three vehicles. On December 10, 1994, the Sullivans' insurance policy was up for renewal, however, they never completed their premium payments, and Westfield cancelled their insurance policy for non-payment on June 6, 1995.

2

{¶5} Over fifteen years after their policy was cancelled, the Sullivans filed a complaint against Westfield, American Select, and Ohio Farmers, asserting claims of breach of contract, and misrepresentation and fraud. They asserted these claims on behalf of themselves and all others similarly situated. The crux of the Sullivans' complaint was that Westfield, American Select, and Ohio Farmers had sold them automobile insurance, including UM/UIM coverage, and had unnecessarily and fraudulently continued to charge them premiums for UM/UIM coverage on more than one vehicle, despite the holding in *Martin, supra.*

{¶6} As to the breach of contract claim, the Sullivans alleged Westfield provided "something other than what the parties contracted the plaintiffs would receive for payment of premiums for 'UM' on vehicles beyond the first; charging a fee for a 'benefit' which does not exist; breaching the fiduciary duty owed by the carrier to its customers; and breaching the contractual duty of good faith and fair dealing."

{¶7} In regard to the misrepresentation and fraud count, the Sullivans asserted that Westfield represented to them that "the amount they were paying for vehicles after the first was for UM coverage for the named insured and family members, when that was untrue; and was instead for guest coverage." They contended that they had so relied, to their detriment.

{¶8} Westfield, American Select, and Ohio Farmers filed a motion to dismiss the complaint, which the trial court denied in part, granted in part, and converted in part to a motion for summary judgment. Pursuant to Civ.R. 12(B)(6), the trial court dismissed American Select and Ohio Farmers from the suit, finding that the Sullivans had failed to state a claim against those entities upon which relief could be granted.

The trial court determined that "[n]othing in the complaint indicates that the named plaintiffs had any contractual relationship with American Select Insurance Company or Ohio Farmers Insurance Company. The only allegation against American Select Insurance Company and Ohio Fa[r]mers Insurance Company is that they are subsidiaries of Westfield."

{¶9} Westfield also sought dismissal pursuant to Civ.R. 12(B)(6), but the trial court converted this branch of the motion into a motion for summary judgment and permitted the parties to further brief the matter. The trial court did so because Westfield's 12(B)(6) motion presented material outside the complaint, and the court did not exclude such materials. *See* Civ.R. 12(B).

{¶10} In its motion for summary judgment, Westfield argued, among other things, that the Sullivans' claims were barred by the applicable statutes of limitations. The Sullivans countered that the statute of limitations as to the breach of contract claim had been tolled during the pendency of *Beck v. Westfield Natl Ins. Co.*, Cuyahoga Common Pleas, No. CV-09-691286, 2010 Ohio Misc. LEXIS 564 (Dec. 3, 2010), and therefore their action was brought within the 15-year statute of limitations, as extended. They asserted that because *Beck* included class action allegations, it tolled the running of the statute of limitations as to them because they were putative class members.

{¶11} As to the misrepresentation and fraud claim, the Sullivans argued that the four-year statute of limitations had been tolled by application of the discovery rule, because they had only recently discovered that Westfield had misrepresented the premiums as UM/UIM coverage for the insureds and family members, and not as guest coverage.

4

{¶12} The trial court agreed that the Sullivans' claims were barred by both the written contract and fraud statutes of limitations. As to the breach of contract claim, the trial court distinguished the case from *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380 (2002), upon which the Sullivans had relied, and stated that the Sullivans had "made the choice to rely on the potential class action, the risk that the case could be dismissed on merits is foreseeable, and the plaintiff, having made the choice to rely on the class action, should not be permitted a second bite at the apple." The trial court pointed out that "[i]n the case before this court, the previous lawsuit, filed in Cuyahoga County, never addressed the class action allegations, and granted the defendant's motion to dismiss as to the breach of contract claim, and granted the defendant's motion for summary judgment on the fraud and misrepresentation claim. Thus, the action did not fail otherwise than upon the merits and R.C. 2305.10 is not applicable and cannot toll the statute of limitations."

{¶13} With regard to the misrepresentation and fraud claim, the trial court found that the Sullivans had constructive knowledge of the facts giving rise to their claim, and that constructive knowledge was sufficient to begin the running of the statute of limitations. "That they were not aware of the legal significance of these charges (that the additional premiums only provided UM coverage for 'guests' and were not necessary to protect the insureds and their resident family members) does not act to toll the statute of limitations. 'Ignorance of the law does not toll the statute of limitations.'"

{¶14} Accordingly, the trial court granted Westfield's motion for summary judgment in its entirety, disposing of the case. The Sullivans timely appealed, and now bring the following assignments of error:

**{¶15}** "[1.] The trial court erred in granting Defendant's motion for Summary Judgment which dismissed Plaintiff's breach of contract and fraud claims on statute of limitations grounds."

**{¶16}** "[2.] The trial court erred in dismissing the other Westfield coverage entities."

**{¶17}** Westfield has brought a single cross-assignment of error:

**{¶18}** "The trial court did not consider alternative grounds in granting Defendant's Motion for Summary Judgment which dismissed Plaintiffs' breach of contract and fraud claims on statute of limitations grounds."

### The Motion for Summary Judgment - Statute of Limitations

**{¶19}** In their first assignment of error, the Sullivans challenge the trial court's grant of summary judgment in favor of Westfield based on statute of limitations grounds. They argue that the trial court erred in not tolling the 15-year statute of limitations applicable to the breach of contract claim on account of *Beck*, *supra*, and not applying the discovery rule in determining when the 4-year statute of limitations began running on the misrepresentation and fraud claim. We find that the trial court properly declined to find that either statute of limitations was tolled, and thus we affirm the grant of summary judgment to Westfield on statute of limitations grounds.

### Standard of Review

**{¶20}** We review de novo a trial court's order granting summary judgment. *Hapgood v. Conrad*, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, ¶13, citing *Cole v. Am. Industries and Resources Corp.*, 128 Ohio App.3d 546 (7th Dist.1998). "A reviewing court will apply the same standard a trial court is required to apply, which is to

6

determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Id.*, citing *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826 (9th Dist.1990).

{¶21} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio

7

St.3d 112, 526 N.E.2d 798." *Welch v. Ziccarelli*, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, ¶40.

### *Beck* Did Not Toll the Breach of Contract Statute of Limitations

{¶22} Pursuant to R.C. 2305.06, a plaintiff must bring an action for breach of contract within 15 years of the date that the cause of action accrued. The Sullivans do not dispute they brought their claim for breach of contract later than 15 years after the cause of action had accrued (June 6, 1995), but argue that the statute of limitations had been tolled during the pendency of the *Beck* case in the Cuyahoga County Court of Common Pleas. They suggest that the tolling of the statute thus brought their filing date of February 11, 2011 within the 15 years limitations period.

{¶23} The Sullivans rely on *Vaccariello, supra*, asserting that because the *Beck* case included class action allegations, the statute of limitations was tolled because they were putative class members in the *Beck* action. The *Vaccariello* court held specifically that "the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Vaccariello* at 382-383.

{¶24} A review of the Cuyahoga County Common Pleas Court's decision in *Beck* reveals that the action did not terminate because of a failure to secure class certification, as in *Vaccariello.* Instead, the *Beck* court disposed of the action squarely on the merits of the case. The plaintiffs in *Beck* brought identical claims against Westfield as the Sullivans attempted to bring here, including class action allegations. The trial court never addressed the class action allegations in *Beck*; instead, the trial

8

court granted Westfield's motion to dismiss the breach of contract claim and its motion for summary judgment on the fraud and misrepresentation claim. Both motions and judgment entries addressed the merits of the case; thus, the *Beck* case did not fail "otherwise than upon the merits."

{¶25} In *Vaccariello,* the plaintiff was able to successfully invoke the saving statute, R.C. 2305.19 (which adds one year to the applicable limitations period for an action that was commenced but "fails otherwise than upon the merits"), because the federal court denied class certification. Thus the first action "failed otherwise than upon the merits." As the tolling of time in *Vaccariello* was based on the saving statute, it was essential that the first action filed by the Becks "failed otherwise than upon the merits" in order for the Sullivans to benefit from *Vaccariello.* It is critical to note that had the federal case in *Vaccariello* failed on the merits, the outcome of that case would have been different, because the saving statute would then have been unavailable to toll the time.

{¶26} In contrast, the *Beck* case, where the Sullivans could potentially be class members (and indeed sought to be added), failed upon the merits. Therefore, the saving statute was not available to the Sullivans, and *Vaccariello* is distinguishable.

{¶27} The Sullivans' statutory time expired in June 2010; *Beck* was pending at that time. In June 2010, the Sullivans essentially had to make a decision whether to file their own class action in Lake County before the statutory time expired, or gamble and wait for the outcome of the *Beck* case, in which the trial court could do a number of things: decide the merits; decide otherwise than on the merits; certify the class and proceed to merits; or, deny the class and proceed to merits. Under *Vaccariello*, the time

9

could only be tolled if the Cuyahoga county case "failed otherwise than upon the merits," such as when the trial court denied certification. Then the time for Sullivan's claim would be tolled up to that point.

**{¶28}** The Sullivans had two choices in June 2010. The first was to hold off filing their own claim – the benefit would be saving any time and expense in filing, while the risk would be that *Beck* may be decided upon the merits, rendering the saving statute inapplicable. The second was to file their own claim to protect the statute in the event *Beck* failed "upon the merits."

**{¶29}** The Sullivans chose the former, taking the risk that the case could be decided on the merits and not in their favor. As Judge Lucci remarked, the Sullivans should not be allowed a second bite at the apple after making their choice.

**{¶30}** Therefore, we find the court below correctly determined that the statute of limitations was not tolled during the pendency of *Beck,* and that the Sullivans failed to bring their action within the 15 year limitations period

## The Discovery Rule Does Not Delay the Running of the Fraud Statute of Limitations

**{¶31}** Pursuant to R.C. 2305.09, a plaintiff must bring a claim for fraud and misrepresentation within four years of discovering the fraud. The Sullivans argue that the fraud action was tolled by the "discovery rule," because they claim they only recently discovered that Westfield misrepresented that the UM/UIM premiums on the additional vehicles provided UM/UIM coverage, when Westfield really only provided guest coverage.

**{¶32}** "The discovery rule set forth in R.C. 2305.09(D) is applicable to claims sounding in fraud. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 182, 546

10

N.E.2d 206. 'The discovery rule operates to extend the time in which a party may file a complaint. Generally, the discovery rule states that the statute of limitations does not begin to run until the plaintiff discovered, or through the exercise of reasonable diligence, should have discovered, the complained of injury.' *Smith v. Rudler*, 1993 Ohio App. LEXIS 3967, *3-4 (Aug. 13, 1993), Ashtabula App. No. 92-A-1753, unreported, citing *Investors REIT One, supra,* at 179. Thus, '[a] cause of action for fraud or conversion accrues either when the fraud is discovered, or in the exercise of reasonable diligence, the fraud should have been discovered.' *Stokes v. Berick*, 1999 Ohio App. LEXIS 6264, *14 (Dec. 23, 1999), Lake App. No. 98-L-094, unreported, citing *Investors REIT One, supra*, paragraph 2b of the syllabus." *Thut v. Thut*, 11th Dist. No. 2000-G-2281, 2001 Ohio App. LEXIS 1748, *8-9 (April 13, 2001). *See also Ciganek v. Kaley*, 11th Dist. No. 2004-P-0001, 2004-Ohio-6029, ¶23. The applicable statute of limitations is triggered by the "*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance * * *." (Emphasis sic.) *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1927).

{¶33} The trial court was correct not to apply the discovery rule to the Sullivans' fraud claim, because the Sullivans had knowledge of all the relevant facts back in 1994. From our review of the record, we find the Sullivans failed to meet their reciprocal burden of demonstrating that there remains a genuine issue of material fact for trial. Simply put, the Sullivans did not demonstrate why, in the exercise of due diligence from the release of the *Martin* decision in 1994, they could not have discovered the alleged fraud.

{¶34} The UM/UIM premiums applied to each of their three vehicles are obvious from their declaration sheet, thus they are presumed to know the contents of their policy and that they were being assessed these charges. *See Michigan Auto Ins. Co. v. Van Buskirk*, 115 Ohio St. 598, 606 (1927). Furthermore, Mr. Sullivan, in his affidavit, confirmed that he had in fact reviewed the declaration page and was aware they were being charged multiple UM/UIM premiums. While the Sullivans were not aware of the legal significance of these multiple premiums, nor the fact that it was legally unnecessary to pay a separate premium for each automobile to provide UM/UIM coverage to them and their resident family members, that lack of understanding of the legal significance does not act to toll the running of the statute. "Ignorance of the law does not toll the statute of limitations." *Lynch v. Dial Finance Co. of Ohio, Inc.*, 101 Ohio App.3d 742, 748 (8th Dist.1995).

{¶35} Furthermore, "all persons are 'conclusively presumed to know the law.'" *In re Estate of Holycross*, 112 Ohio St.3d 203, 2007-Ohio-1, ¶27, quoting *State v. Pinkney,* 36 Ohio St.3d 190, 198 (1988). The Sullivans, therefore, are presumed to have known that, in a post-*Martin* world, UM/UIM coverage followed the insureds and not the vehicles, requiring only one premium to cover their household. While the Sullivans may not have known what sort of coverage the additional UM/UIM premiums provided them, if anything, they were on notice back in 1994 to inquire if concerned. Therefore, the discovery rule does not apply, as the Sullivans were fully in possession of all the facts necessary to bring their claim. The fact they were not told until 16 years later, by their attorney, that they might have a claim "cannot be used to circumvent the statute of limitations or limitations would become meaningless." *Lynch* at 748.

12

**{¶36}** The trial court was correct in its determination that no genuine issue of material fact existed and in its grant of summary judgment in favor of Westfield. Under no set of facts could the Sullivans continue their action against Westfield, because, as a matter of law, they were time barred from so doing. The first assignment of error is without merit.

### The Motion to Dismiss American Select and Ohio Farmers

**{¶37}** In their second assignment of error, the Sullivans argue that the trial court erred when it dismissed American Select and Ohio Farmers from the action. Because we have determined that summary judgment was appropriate on statute of limitations grounds, this assignment of error is moot. Even if it was determined that American Select and Ohio Farmers were improperly dismissed from the action, the trial court's grant of summary judgment in favor of the defendants and this court's affirmance of that decision above would render any reversal of their dismissals meaningless. The Sullivans, whether upon the motion to dismiss, or the subsequent motion for summary judgment, would ultimately have been precluded from pursuing their claims against American Select and Ohio Farmers, just as they were against Westfield. The claims against American Select and Ohio Farmers were identical to those against Westfield, and accrued on the same date, thus they too would have been time barred and resolved through a grant of summary judgment to the defendants. Therefore, the second assignment of error is without merit.

### Westfield's Cross-Assignment of Error

**{¶38}** Westfield, in an effort to protect its position and prevent the reversal of the trial court's decision, brought a single cross-assignment of error. However, we need not

13

address the cross-assignment of error, as we decline to reverse the trial court's grant of summary judgment.

{¶39} Pursuant to R.C. 2505.22, "assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part." These cross-assignments of error, however, may only be considered by a reviewing court when necessary to prevent the reversal of the judgment under review. *Parton v. Weilnau*, 169 Ohio St. 145, 158 (1959). "There is nothing in the statute to indicate that such assignments of error shall necessarily be passed upon where, as here, the judgment of the [court] is being affirmed." *Id.*

{¶40} Because we affirm the decision of the trial court, we decline to further consider Westfield's cross-assignment of error. The Sullivans' assignments of error are without merit and the judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.